UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.S.,<br><br>                     Plaintiff,<br><br>v.<br><br>WILLIAM ASHLEY OLIVER III, et al.<br>                     Defendants. | Case No.: 19cv746-JLS-LL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL**<br><br>**[ECF No. 13]** |

Currently before the Court is Defendant William A. Oliver III's Motion to Compel [ECF No. 13] ("Mot.") and Plaintiff L.S.'s Opposition [ECF No. 15] ("Opp."). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## **RELEVANT DISCOVERY BACKGROUND**

The instant motion arises from Defendant's Request for Production No. 14.

RFP No. 14 requests:

> All documents and ESI, including text messages, emails, and social media messages (including Facebook, Snapchat and Instagram), You have sent to any person, including Oliver, Lidia Chesnokova, Brock Gorubec, Caroline Oliver and Stephen Lucas, dated January 1, 2018 to the present.

1

> The term "Oliver" shall mean and refer to Defendant, William A. Oliver III.

Mot., Ex. A at 3. Plaintiff responded to the RFP as follows:

> Plaintiff repeats the objection and reservation of rights set forth above. Plaintiff further objects that this request is not proportional to the needs of the case, is overbroad and, to the extent it is overbroad, calls for the production of items that are private, privileged (including items protected from disclosure under the attorney-client privilege and attorney work product doctrine), and not relevant to any claim or defense in this action, and is not likely to lead to the discovery of admissible evidence. Subject to these objections and reservation of rights, Plaintiff will produce all responsive documents within her possession, custody or control that are <u>relevant to the claims and defenses in this action.</u>

Id. at 3-4 (emphasis added).

Defendant argues the underlined language above is the "center of the controversy." Mot. at 3. Specifically, Defendant argues Plaintiff improperly withheld responsive documents "based on [Plaintiff's] counsel's unilateral determination that the records are not 'relevant to the claims and defense.'" Id. at 4.

In response, Plaintiff argues she has already produced approximately three-hundred pages of documents "pertaining to any matter even tangentially related" to the litigation. Opp. at 1-2. Instead, Plaintiff argues that rather than seeking relevant communications, Defendant's requests are designed to "uncover evidence of Plaintiff's sexual history, unrelated to Defendant[.]" Id.

## **LEGAL STANDARD**

Federal courts hearing diversity cases apply federal procedural law and state substantive law. Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any unprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in

the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Per the Federal Rules, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." Id. at 34(b)(2)(B).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 U.S. Dist. LEXIS 42339, at *3 (S.D. Cal. May 14, 2009) (internal citations omitted). Thereafter, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Id. (internal citations omitted).

## ANALYSIS

### I. All Communications Between Plaintiff and Defendant

Defendant seeks an order from the Court compelling Plaintiff to produce all communications between Plaintiff and Defendant from January 1, 2018 to the present. Mot. at 5. Defendant argues the "responsive documents withheld by Plaintiff (or counsel) . . . will evidence a 'normal' relationship between two adults[.]" Id. at 7-8. Defendant argues these communications are relevant in "evaluating whether there was 'malicious' or 'oppressive' conduct" for Plaintiff's punitive damages claim and are "probative of Plaintiff's prayer for non-economic damages." Id. at 8.

3

19cv746-JLS-LL

Plaintiff argues Defendant offers no support "for the proposition that couples expressing affection toward each other at one point in their relationship . . . somehow minimizes the severity of the abusive conduct or undermines malicious intent." Opp. at 5.

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

The scope of relevancy under the Federal Rules is not boundless. See Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries."). Here, the Court finds Defendant's blanket request for "all communications" between Plaintiff and Defendant across multiple communication platforms from January 1, 2018 to the present—without regard to subject matter—to be overly broad and disproportionate to the needs of the case.

Defendant argues communications showing Plaintiff and Defendant engaged in a "normal dialogue" over the course of their relationship are relevant to: (1) Plaintiff's punitive damages claim; and (2) Plaintiff's claim that she suffered mental and emotional distress. Mot. at 7-8. Defendant's claim however is unsupported by any legal authority or analysis that Defendant is entitled to the broad range of documents he seeks. See Mot.

Defendant's argument that Plaintiff's counsel improperly withheld documents based on a unilateral determination of their relevancy is similarly unpersuasive. Although Defendants are correct that an "interested party cannot be the 'final arbiter' of relevance . . . [d]iscovery in our adversarial system is based on a good faith response to demands for production by an attorney constrained by the Federal Rules and by ethical obligations." Mackelprang v. Fid. Nat'l Title Agency of Nev., Inc., No. 2:06-cv-00788-JCM-GWF, 2007

U.S. Dist. LEXIS 2379, at *23-24 (D. Nev. Jan. 9, 2007) (quoting Rozell v. Ross-Holst, No. 05 Civ. 2936 (JGK) (JCF), 2006 U.S. Dist. LEXIS 2277, at *11-12 (S.D.N.Y. Jan. 20, 2006)). Accordingly, "[w]hen a party can demonstrate that an adversary may be wrongfully withholding relevant information, it can seek relief[.]" Id.

Here, Defendant has made no such showing that Plaintiff's counsel is wrongfully withholding relevant communications. Defendant's mere speculation that other relevant communications exist and are being improperly withheld is insufficient to warrant granting a motion to compel "all communications" unbounded by subject matter. See FormFactor, Inc. v. Micro-Probe, Inc., No. C-10-03095 PJH (JCS), 2012 U.S. Dist. LEXIS 62233, at *22 (N.D. Cal. May 3, 2012) (defendant's "grave doubt" that plaintiff failed to produce all responsive documents is not a "colorable basis" for its belief that relevant, responsive documents were being withheld); Tapia v. Huntington Park Police Dep't, No. CV 09-07624 VBF (SSx), 2010 U.S. Dist. LEXIS 152015, at *4-5 (C.D. Cal. May 5, 2010) ("A party's mere suspicion that additional documents exist does not justify a motion to compel."); Goodrich Corp. v. Emhart Indus., Inc., No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 17193, at *9 (C.D. Cal. June 20, 2005) (a party's mere speculation that relevant documents exist and are being improperly held is not a "sound basis" for a motion to compel).

For these reasons, the Court **DENIES** Defendant's motion to compel further communications between Plaintiff and Defendant from January 1, 2018 to the present.

II. **All Communications Between Plaintiff and David Weible and Keith Carrigan**

Defendant seeks an order from the Court compelling Plaintiff to produce all communications between Plaintiff and Mr. David Weible (a former boyfriend) from July 1, 2017 to the present. Mot. at 5. In support, Defendant argues that during Plaintiff's deposition, Plaintiff testified: (1) she sent the subject photograph, or a substantively similar image to Mr. Weible in Fall 2017; and (2) she communicated with Mr. Weible about Defendant and the instant litigation. Mot. at 9. Despite Plaintiff's testimony, Defendant argues Plaintiff did not produce any communications with Mr. Weible in discovery. Id.

5

Defendant therefore seeks an order "compelling Plaintiff to produce communications she exchanged with Mr. Weible, including all sexually explicit photographs she sent, to corroborate her deposition testimony[.]" Id.

Similarly, Defendant requests an order from the Court compelling Plaintiff to produce all communications between Plaintiff and Mr. Keith Carrigan (another former boyfriend) from January 1, 2018 to the present. Id. at 6. In support, Defendant proffers evidence Plaintiff allegedly exchanged sexually charged text messages with Mr. Carrigan. Mot, Ex. F. From this, Defendant argues Plaintiff's communications with Mr. Carrigan relate to: (1) Plaintiff's damages theory; and (2) liability. Id.

Plaintiff argues that Defendant's aim is to improperly "raise Plaintiff's sexual history in violation of Fed. R. 412[.]" Opp. at 6. Specifically, Plaintiff argues that "the fact that Plaintiff may have sent nude or semi-nude photos privately to an individual in the past has no bearing on whether she intended to maintain the privacy of the photos, or the emotional damage she suffered[.]" Id. at 9.

The Court finds Defendant's blanket request for "all communications" between Plaintiff and Mr. Weible and Mr. Carrigan—without regard to subject matter—to be overly broad and disproportionate to the needs of this case. Defendant's argument that it needs Plaintiff's communications with Mr. Weible to corroborate Plaintiff's testimony on more narrow subjects (the Defendant, the instant litigation, and the photo at issue) is inconsistent with Defendant's request for a Court order compelling <u>every</u> communication exchanged between Plaintiff and Mr. Weible across multiple communication platforms from July 1, 2017 onwards.

Similarly, Defendant's justification for "all communications" between Plaintiff and Mr. Carrigan is even more tenuous. Defendant does not make clear and cites to no legal authority as to how the production of <u>every</u> communication between Plaintiff and Mr. Carrigan (a non-party) within a certain time period is relevant to either Plaintiff's damages theory or liability.

It is also not clear how Defendant's request for all communications from: (1) July 1,

2017 to the present (for Mr. Weible) and (2) January 1, 2018 to the present (for Mr. Carrigan) is justified. The incidents at dispute in this litigation allegedly occurred in late 2018. ECF No. 1 at ¶¶ 6-7. Despite this, Defendant has requested all communications spanning many months before and then many months after.

To the extent Defendant is seeking evidence Plaintiff sent the instant photograph to Mr. Weible and Mr. Carrigan, Defendant has not shown at this juncture how this is relevant to his affirmative defense. Defendant appears to be relying on Cal. Civ. Code § 1708.85(6), which states that "there shall be no liability" on the part of a person distributing material under § 1708.85 if "[t]he distributed material was previously distributed by another person." Contrary to Defendant's construction however, § 1708.85 does not state that "there shall be no liability" as long as the distributed material was previously distributed by "the person appearing in the material." Defendant's argument does not comport with the plain text of the statute, and Defendant provides no other support for his argument that he has an affirmative defense so long as Plaintiff shared the instant photograph with any other person at any previous point in time.

The Court is also not convinced Defendant's requests are proper given the underlying policies set forth in Federal Rule of Evidence 412 and the discovery that has already taken place. Federal Rule of Evidence 412 provides: "[t]he following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).

Rule 412 is designed to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with the public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412, Advisory Committee Notes (1994). Evidence regarding sexual behavior is therefore barred except "in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim." Id. Although Rule 412 governs the admissibility of sexual behavior evidence rather than its

7

discoverability, the policies underlying the Rule are considered when resolving discovery disputes. See Doe v. City of San Diego, No. 12-cv-0689-MMA (DHB), 2013 U.S. Dist. LEXIS 109061, at *11 (S.D. Cal. Aug. 1, 2013) (collecting cases).

The Court notes Defendant was already given the opportunity at Plaintiff's deposition to ask Plaintiff questions regarding her previous relationships with Mr. Weible and Mr. Carrigan, including whether she had sent sexually explicit photographs to either of them. See Mot., Ex. C at 70:10-72:73:12; Opp., Ex. 3 at 220:2-223:16; 293:1-295-20;

During her deposition, Plaintiff testified under oath she longer possesses any text messages to Mr. Weibel containing sexually explicit photographs:

> Q   As you sit here today, do you have any text messages where naked photographs were sent to Mr. Weible?
> …
> THE WITNESS:   No.

Opp., Ex. 3 at 222:1-10.

Plaintiff also testified under oath she did not recall sending any text messages with sexually explicit photographs to Mr. Carrigan:

> Q   Did you ever send any sexually explicit photograph to Mr. Carrigan?
> …
> THE WITNESS: Not to my recollection.

Id. at 294:5-8.

In addition, Plaintiff also fully responded to Defendant's Interrogatory No. 12, which asked Plaintiff to:

> State the name, address, and telephone number of every person You have sent a 'sexually explicit' (as that term is used in the Complaint) photograph to from January 1, 2018 to the present.

Opp., Ex. 2 at 8. In response, Plaintiff stated she had sent "two sexually explicit photos to Defendant during the time period" set forth in the Interrogatory. Id. at 9.

Defendant was also given the opportunity to ask Plaintiff questions regarding her

8

19cv746-JLS-LL

sexual history <u>after</u> the incident and her relationship with Defendant ended, including: (1) whether Plaintiff has had sexual relations after her relationship with Defendant ended; (2) how many times; and (3) with how many persons. See Opp. Ex. 3 at 270:23-271:21.

Given the discovery that has already taken place, Defendant has not shown how further intrusions into Plaintiff's private affairs is appropriate and not needlessly cumulative. For these reasons, the Court **DENIES** Defendant's motion to compel all communications between: (1) Plaintiff and Mr. Weible from July 1, 2017 to the present; and (2) Plaintiff and Mr. Carrigan from January 1, 2018 to the present.

### III. All Communications Between Plaintiff and Lidia Chesnokova, Ayla Basha, Sharon Blum and Steven Lucas

Defendant seeks a Court order compelling Plaintiff to produce all communications between Plaintiff and Lidia Chesnokova, Ayla Basha, Sharon Blum and Steven Lucas in December 2018. Defendant notes Ms. Chesnokova, Ms. Blum and Mr. Lucas are listed in Plaintiff's Initial Disclosures as individuals with knowledge regarding: (1) "Defendant's dissemination of one or more sexually explicit photos of Plaintiff"; and (2) "the impact that the theft and dissemination of one or more sexually explicit photos by Defendant has had on Plaintiff." Mot., Ex. B at 2-4.[1] Despite this, Defendant argues Plaintiff produced only a few communications between Plaintiff and these individuals. Mot. at 9. As such, Defendant seeks "all communications" between Plaintiff and these witnesses in December 2018. Defendant argues these communications bear on Plaintiff's "claimed emotional distress damages and the credibility of the witnesses." Id.

Plaintiff states she "already has reviewed and produced every December communication that is related in any way to the litigation." Mot. at 6.

Here, the Court again finds Defendant's request for Plaintiff to produce "all communications" regardless of subject matter to be overly broad and disproportionate to

---

[1] Defendant makes this same representation for Ms. Basha, but Ms. Basha does not appear to be identified in Plaintiff's Initial Disclosures. See Mot., Ex. B.

9

19cv746-JLS-LL

the needs of the case. Defendant provides no evidence to cast doubt on Plaintiff's representation she already produced all relevant communications between Plaintiff and Ms. Chesnokova, Ms. Basha, Ms. Blum and Mr. Lucas. For example, the text communication between Plaintiff and Ms. Chesnokova that Defendant cites to in support is bates-stamped and appears to have been produced by Plaintiff. See Mot., Ex. E. On these facts, Defendant's mere suspicion that other relevant documents are being improperly withheld are insufficient to warrant granting a motion to compel. See FormFactor, 2012 U.S. Dist. LEXIS 62233, at *22; Tapia, 2010 U.S. Dist. LEXIS 152015, at *4-5; Goodrich Corp., 2005 U.S. Dist. LEXIS 17193, at *9.

For these reasons, the Court **DENIES** Defendant's motion to compel all communications between Plaintiff and Lidia Chesnokova, Ayla Basha, Sharon Blum and Steven Lucas in December 2018.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Compel. In light of the Court's ruling, the Court does not address Defendant's request for sanctions under Rule 37(a)(5)(A) because Defendant is not the prevailing party.

**IT IS SO ORDERED.**

Dated: October 1, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge